Miss Doris Gordon, by next friend,

*v.*

Johnny Pollard, Mrs. Lorene Pollard & C. P. Pollard.

(*Jackson*, April Term, 1960.)

Opinion filed May 4, 1960.

Rehearing denied June 6, 1960.

46

GAYLE MALONE, Trenton, JAMES D. SENTER, JR., Humboldt, for plaintiff in error.

KEITH SHORT, Jackson, HARRELL & NOWELL, Trenton, for defendants in error.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

This is an appeal in error from a judgment of the Circuit Court of Gibson County, sustaining a plea in abatement to the declaration filed by the plaintiff below,

Miss Doris Gordon, who sued for damages arising out of an automobile accident which occurred on January 12, 1957.

The declaration alleges that she was riding as a passenger and guest in an automobile being operated by the defendant, Johnny Pollard, which automobile was owned and maintained by the defendants, Mrs. Lorene Pollard and C. P. Pollard, his mother and father, as a family purpose car. That by reason of the negligent operation of the automobile an accident occurred causing extremely severe injuries to plaintiff and by reason of which she incurred approximately damages of $7,500 including medical, doctors and hospital expenses. The second count of the declaration had allegations of statutory negligence on the part of the defendant, Johnny Pollard.

The defendants filed joint and several pleas in abatement to the declaration setting up as matters of abatement that at the time of the accident on January 12, 1957, the defendant, Johnny Pollard, was lawfully married to plaintiff, Doris Gordon, and therefore, she did not have a cause of action for tort committed during coverture and that not having a cause of action against the defendant, Johnny Pollard, it would follow that she did not have a cause of action against his parents under the family purpose doctrine.

The pleas further charge as a matter of abatement that with reference to the decree of annulment the court did not have authority to entertain the proceedings and charged fraud, and that, therefore, the annulment proceedings were either null and void, or had the legal effect of granting the plaintiff an absolute divorce. In addition, the defendant, C. P. Pollard, charged that the auto-

mobile belonged to the defendant, Mrs. Lorene Pollard, and that he could not be held liable under the family purpose doctrine.

The plaintiff, Miss Doris Gordon, then filed separate demurrer to the joint and several pleas in abatement, but generally stating that the pleas in abatement were insufficient on their face to bar the action of plaintiff; that the pleas in abatement and the exhibits showed on the face that the marriage between plaintiff and defendant, Johnny Pollard, was annulled by decree of the court holding the marriage void ab initio, and that there was no bar to plaintiff's suit against defendants; that the exhibits to the pleas in abatement show that the court had jurisdiction of the parties in the subject matter; that the defendant was notified of the proceedings; that the proceedings were valid on the face; that there was no sufficient basis set out in the pleas to sustain allegations of fraud; and that this was a collateral attack on the decree of the court.

The trial court sustained those grounds of the demurrer charging that the pleas in abatement and the exhibits thereto showed on the face that the annulment decree was valid and that the same could not be collaterally attacked, and overruled those grounds of the pleas in abatement attacking the validity of the annulment proceedings and the annulment decree.

The plaintiff excepted to that part of the ruling of the trial court overruling the grounds of the demurrer and sustaining that part of the pleas in abatement with reference to the effect of the annulment decree on her tort action. This appeal in error resulted.

■ One spouse cannot maintain an action against the other for an alleged tort which occurred in the State of Tennessee during coverture, because there is no civil right to be redressed. *Prince v. Prince,* 205 Tenn. 451, 326 S.W.2d 908.

The common-law rule of interspousal immunity was not abrogated by the Married Women's Act of Tennessee, T.C.A. sec. 36-601 et seq. *Lillienkamp v. Rippetoe,* 133 Tenn. 57, 179 S.W. 628, L.R.A.1916B, 881.

■ We are of the opinion that an annulment of a voidable marriage does not render the marriage void ab initio for all purposes. See *Callow v. Thomas,* 322 Mass. 550, 78 N.E.2d 637, 2 A.L.R.2d 632; *Sleicher v. Sleicher,* 251 N.Y. 366, 167 N.E. 501; *Southern Railway Co. v. Baskette,* 175 Tenn. 253, 133 S.W.2d 498.

■ An annulment of a voidable marriage does not create in a party thereto a right to maintain an action against the other party for a tort which occurred during the period the status of the parties was that of man and wife. *Austin v. Austin,* 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388.

■ A marriage procured by fraud is, at most, a voidable marriage as distinguished from a void marriage. *Heath v. Heath,* 85 N.H. 419, 159 A. 418; *Du Pont v. Du Pont,* 8 Terry 231, 90 A.2d 468.

■ It is the position of the defendants below that the marriage of the plaintiff and defendant, Johnny Pollard, was neither void nor voidable, however, the defendants contend that the marriage was at most voidable. The marriage of the plaintiff and the defendant, Johnny Pollard, was not prohibited by a positive statute or against

strong public policy of the State of Mississippi or the State of Tennessee, therefore, the marriage was not void as if it had never been. The marriage may have been voidable because the plaintiff was then seventeen years of age, however, the marriage was valid until it was avoided by the legal proceedings incurred against the defendant.

Now it appears that these parties under the age required by law obtained the marriage license by misrepresentation or fraud and it is natural to assume that after they obtained the license and were married that they occupied the relationship of husband and wife. Can it be said that after they cohabited together that the defendant, husband, could have been criminally prosecuted for having relations with his young wife?

We think that the annulment of a voidable marriage may well restore certain existing property and statutory rights to a spouse, but does not create in a spouse, husband or wife, a right to maintain an action against the other for a tort which occurred in Tennessee during the period the status of the parties was that of husband and wife.

Upon the solemnization and consummation of the marriage of the plaintiff and defendant, each was subject to all of the privileges and all of the disabilities of coverture, and these privileges and disabilities continued until the marriage was avoid by the plaintiff.

May these actualities be obliterated retroactively by an annulment decree?

To give an annulment decree such an effect would be to substitute legal theory for practicality. The retroactive effect of annulment is not without limits, pre-

scribed by policy and justice.   55 C.J.S. Marriage sec. 68, p. 951.

The question raised by the plaintiff in this case was present in the case of *Callow v. Thomas,* 322 Mass. 550, 78 N.E.2d 637, 2 A.L.R.2d 632.

The Supreme Court of the State of Massachusetts held that a decree of nullity of a voidable marriage does not create in a spouse a right to maintain an action against the other spouse for a tort which occurred during coverture.

After discussing the English cases hereinabove cited, the Court said:

"We are of opinion that the exception recognized in these cases is sound and that the present case falls within it.  At the time of the accident the parties were husband and wife for all intents and purposes.  Had no proceedings been brought to annul the marriage, this status would have endured until the marriage was terminated by death or divorce. * * *

"While it doubtless is true that a decree of nullity ordinarily has the effect of making a marriage, even one which is voidable, void ab initio, this is a legal fiction which ought not to be pressed too far.  To say that for all purposes the marriage never existed is unrealistic.  Logic must yield to realities.  Public policy requires that there must be some limits to the retroactive effects of a decree of annulment. * *

"On the day after the accident if the plaintiff had brought suit against the defendant it could not have been maintained, for the marriage at that time had not

been declared invalid. The situation was unaffected by the subsequent decree of annulment."

In the recent case of *Brawner v. Brawner,* 1959, 327 S.W.2d 808, 814, the Supreme Court of the State of Missouri said:

"The common-law rule of spousal immunity from suit for a personal tort * * * should not be lightly disturbed."

We think the reasoning in the Massachusetts case is sound and we are of the opinion that the trial judge was correct in dismissing the suit.

It therefore results that the judgment of the lower court is affirmed.