**Harry William BREWER,
Plaintiff-Appellant,**

v.

**Hilda Faye (Brewer) MILLER,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

Feb. 17, 1984.

Permission to Appeal Denied by
Supreme Court June 11, 1984.

S. Wallace Brewer, Kingston, for plaintiff-appellant.

John M. Norris, Knoxville, for defendant-appellee.

HIGHERS, Judge.

This action was commenced when Harry William Brewer (referred to as the plaintiff), filed suit against Hilda Faye Brewer (referred to as the defendant), to require the immediate sale of real property owned by the parties as tenants in common pursuant to a final decree of divorce dated October 15, 1979.

The final decree incorporated a property settlement agreement which contained the following language:

In the event wife remarries, her right to continue residing in the parties' home shall terminate and the residence shall be immediately sold, and the net proceeds therefrom equally divided between the parties.

On or about October 16, 1981, the defendant remarried and the plaintiff alleges that the defendant thereby terminated her right to remain in the residence of the parties. The defendant answered and admitted the alleged marriage, but she averred that it had been annulled and declared void *ab initio,* and that she was entitled to continue to live in the home because there had been no valid remarriage.

The trial court denied the relief sought by the plaintiff and allowed the defendant to remain in the house. From that action the plaintiff brings this appeal.

■ The issue for consideration before this court is whether the defendant's right to reside in the residential premises, as provided in the property settlement agreement incorporated into the final decree of divorce, is revived by the annulment of the defendant's second marriage.

There are no reported Tennessee cases on the precise point at issue. Two cases have been cited to the Court, however, as bearing upon this question. In *Gordon v. Pollard,* 207 Tenn. 45, 336 S.W.2d 25 (1960), in a suit for personal injuries between a husband and wife whose marriage had been subsequently annulled, the Court stated: "We think that the annulment of a voidable marriage may well restore certain existing property and statutory rights to a spouse, but does not create in a spouse, husband or wife, a right to maintain an action against the other for a tort which occurred in Tennessee during the period the status of the parties was that of husband and wife." 336 S.W.2d at 27. The doctrine of interspousal immunity was abolished in Tennessee by *Davis v. Davis,* 657 S.W.2d 753 (Tenn.1983), in which the Court stated: "We think the decision in *Gordon v. Pollard, supra,* is illustrative of the irrational and unjust results that may come from judicial adherence to once utilitarian, but now outmoded legal tenets." 657 S.W.2d at 755. We do not believe that the ruling in *Gordon v. Pollard, supra,* is dispositive of the case *sub judice.*

Further, we have been cited to the case of *MacPherson v. MacPherson,* 496 F.2d 258 (6th Cir.1974), a case arising out of the United States District Court for the Middle District of Tennessee, but applying Connecticut law, in which the court found that proof of a bigamous second marriage, standing alone, which resulted in annullment, was not sufficient to require the first husband to resume support payments under a prior separation agreement.

This problem has been dealt with in various ways in other jurisdictions. *See* 45 A.L.R.3d 1033 (1972). Some courts have held that a marriage which is void *ab initio* has no legal effect and annulment of such a marriage will serve to revive the obligations owed by a former spouse. *Johnston v. Johnston,* 3 Kan.App.2d 208, 592 P.2d 132 (1979); *Broadus v. Broadus,* 361 So.2d 582 (Ala.Civ.App.1978). Others have ruled that any remarriage terminates the right to alimony or support even where the second marriage is void. *Torgan v. Torgan,* 159 Colo. 93, 410 P.2d 167 (1966); *MacPherson v. MacPherson, supra.* Still others have held that annulment of a marriage which is not void but simply voidable will revive the former husband's support obligations. *Robbins v. Robbins,* 343 Mass. 247, 178

N.E.2d 281 (1961); *Peters v. Peters,* 214 N.W.2d 151 (Iowa 1974).

The better-reasoned rule is that which distinguishes between second marriages which are void, and those that are voidable, and allows for reinstatement of the spouse's right to support only in the former. A voidable marriage differs from a void marriage in that the former is treated as valid and binding until its nullity is ascertained and declared by a competent court. *MacPherson v. MacPherson, supra.* In *Broadus v. Broadus, supra,* the Court sets out in summary the following persuasive reasons for denying reinstatement where the second marriage is merely voidable:

> (1) The first husband's right to rely on the second marriage as a valid remarriage entitling him to recommit any assets previously chargeable to alimony to other purposes; (2) the fact that only the wife and her second husband would ordinarily know whether there was a cause for the annulment, thus creating a situation where the marriage might continue indefinitely and thereby cause the first husband's affairs to be subject to the conduct of parties involved in a relationship in which he has no part; (3) the possibility that the wife's divorce from her second husband could result in alimony from the second husband while an annulment could reinstate alimony from the first, thus permitting the wife to choose between two sources of support under circumstances where she should not be given such control in view of the fact that it was she who entered into the second marriage, and the subsequent vicissitudes of that marriage should not be attributable to her first husband; and (4) the potential for inequitable treatment to the first husband in that the wife's obtainment of an annulment instead of a divorce could vitally affect the rights of her first husband by causing his obligation to pay alimony to be reinstated as a matter of law in a proceeding at which he was not represented or able to challenge the validity of the grounds asserted in support of the annulment. 361 So.2d at 584.

The foregoing reasons are inapplicable where the second marriage is void from the beginning. In the latter situation the parties stand in the same relationship as if there had never been a second marriage. A voidable marriage, however, is valid and binding upon the parties until such time as it is annulled by a competent court. *Flaxman v. Flaxman,* 57 N.J. 458, 273 A.2d 567 (1971). It is possible for a voidable marriage to be ratified and to ripen into a valid marriage. *Evans v. Evans,* 212 So.2d 107 (Fla.App.1968).

Although the trial court found in the instant case that the marriage between the defendant and Edward Miller was void *ab initio,* it is clear from an examination of the decree that it was merely voidable since the ground for annulment was that the marriage was never consummated. The trial court found that the marriage was void *ab initio* by application of the "relation back" doctrine which is a legal fiction fashioned by the courts to promote justice between parties to a voidable marriage. In *Darling v. Darling,* 44 Ohio App.2d 5, 335 N.E.2d 708, 711 (1975), the Court stated:

> Although an annulment decree technically operates to hold both void and voidable marriages as nullities, as though they have never existed, this legal fiction of retroactive nullification of a once valid marriage should not be applied so as to work an injustice. The "relation back" doctrine is a legal fiction used to promote justice between the parties to a voidable marriage.

We believe the interests of justice are best served by holding that the voluntary remarriage of a party wherein the legal relationship is merely voidable at the option of that party operates to extinguish the right to alimony, support, or other benefits conferred as a result of a prior marriage which were decreed to terminate upon the remarriage of such party.

The judgment of the court below is accordingly reversed, and this matter is remanded for further proceedings consistent

with this opinion. Costs of appeal are adjudged against the defendant.

NEARN, P.J. (W.S.), concurs.

TOMLIN, J., dissents.

TOMLIN, Judge, dissenting.

I must respectfully dissent from the opinion of my colleagues. The rationale for my dissent can be better understood by a more thorough treatment of the facts in this cause, which have been supplied by a narrative statement of the proceedings filed pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure, and approved by the chancellor.

In the decree of divorce, the chancellor awarded the defendant the custody of the parties' minor daughter, then twelve years of age. While the majority opinion quotes a small segment from the property settlement agreement pertaining to the sale of the parties' home upon remarriage of the wife, this portion of the property settlement agreement becomes more relevant when read in its entirety. Section 3 reads:

3. The parties own a residence located at 5720 Sanford Road, Knoxville, Knox County, Tennessee. It is agreed that parties shall remain as tenants in common of said property, each having an undivided one-half (½) interest therein, and Wife shall have the right to live in said residence until the parties' minor child reaches her 18th birthday, at which time the residence will be sold, and the net proceeds from the sale thereof shall be divided equally between the parties. Wife shall be responsible for paying the mortgage payment, Homeowner's insurance premium, County and City property taxes on the residence until it is sold, and shall hold Husband harmless from any debt, expense, or obligation arising therefrom. In the event Wife remarries, her right to continue residing in the parties' home shall terminate, and the residence shall be immediately sold and the net proceeds therefrom equally divided between the parties.

Thus, it can be seen that a major purpose of this agreement was to provide a home for the parties' minor child. The sum of $225 per month was agreed upon as child support to be paid by the plaintiff to the defendant. However, the agreement provided that this sum was to be used by the defendant to pay the mortgage, homeowner's insurance, and city and county property taxes on the residence.

The defendant and the parties' minor child remained in the residence on Sanford Road until the defendant's marriage to one Mr. Miller on October 16, 1981, when she moved into other property that they intended to purchase. The defendant's petition for annulment brought in the Circuit Court of Knox County alleged that she separated from Mr. Miller three days following the marriage, and that the marriage was never consummated. The defendant sought the annulment of the marriage upon the grounds of fraud and misrepresentation on the part of Miller. In the judgment annulling this marriage, the court stated:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiff's marriage to the defendant is hereby annulled the same as if said marriage had never taken place, and said marriage is voided ab initio.

The statement of the evidence shows that the defendant tried on several occasions to move back into the home on Sanford Road, but was prevented from doing so by the plaintiff. However, she was successful in moving back in June, 1982. The proof is uncontradicted that the parties' minor daughter had lived in the home on Sanford Road for her entire life, and that she was well settled in the high school and church in the section of Knoxville in which the home was located. A neighbor of the defendant who worked at the church attended by the parties' daughter testified that the young lady was active in that church and attended services regularly.

The defendant testified that the parties' daughter had wished to graduate from the high school which she was attending, and that it was her desire to remain in the

home on Sanford Road until she graduated from high school. The parties' daughter was sixteen years of age at the time of trial and will attain the age of eighteen in early 1985. She will graduate from high school in the spring of that year. The plaintiff conceded that his daughter was in the care and custody of the defendant, and that his daughter and the defendant had no place to reside other than in the residence on Sanford Road.

The court-approved statement of the evidence states as follows:

> After argument of counsel, the Court made the decision that the relief sought in the original complaint in cause no. 74916, seeking immediate sale of the real property owned by the parties was denied, based upon the Court's opinion that the parties' property settlement agreement entered between the parties contemplated an intention that the parties' minor child, Stacy Lee Brewer, would remain in the subject real estate until her 18th birthday, and that in the interest of the minor child, he would order that the house not be sold at this time but that the sale be postponed until the minor child reaches her eighteenth birthday. That the provisions of the final decree between Harry William Brewer and Hilda Faye Brewer requiring immediate sale of the real estate upon a marriage of Hilda Faye Brewer did not take effect. The Court further amended the final judgment for absolute divorce filed in case no. 66146 so that the same would read "in the event wife vacates the premises at 5720 Sanford Road for an interrupted (sic) period of thirty (30) days, except for medical reasons, the residence shall be immediately sold and the net proceeds therefrom equally divided between the parties."

This case having been tried below by the chancellor alone, and the chancellor having made certain findings, our review of the finding of the trial court is *de novo* upon the record in the trial court, and is accompanied by a presumption of correctness, and absent an error of law, must be affirmed. Rule 13(d), T.R.A.P.

I agree with my brothers that there are no reported Tennessee cases on point. Therefore, we are not faced with any statutory or case law that would control the issue presented by this appeal. Absent this law, the issue really is whether or not the evidence in the record preponderates against the action of the chancellor. I am of the opinion that it does not, and that the chancellor was correct.

I agree with my brothers that *Gordon v. Pollard,* 207 Tenn. 45, 336 S.W.2d 25 (1960) is not dispositive of this case. I am also of the opinion that it needs no further castigation to go with the unjustified criticism given it by our Supreme Court in *Davis v. Davis,* 657 S.W.2d 753 (Tenn.1983), which case is in no way relevant and material to the issues in the case at bar.

The chancellor below was faced with a set of facts for which there was no applicable controlling law. That being the case, his judicial responsibility was to be equitable at the same time that he was being just. That he was. It can be safely said that when the parties' entered into this property settlement agreement, and when the chancellor in the divorce decree approved it, it could not have been within the contemplation of the parties that what later happened would happen.

Although not a party to the domestic litigation, the real party in interest, whose rights and interests the chancellor below sought to protect, was the parties' sixteen-year-old daughter. Because of a technical mistake that another court of record had rendered a nullity, the father of this minor child sought to dispossess her of the only home that she had ever known. She will lose it soon enough when she reaches her majority. With that I have no quarrel.

The chancellor was dealing with a particular type of contract that he should have treated and did treat differently than he would have an ordinary agreement between two adults—a marriage contract. The rights eminated from a marriage contract—and a divorce is simply a negative

aspect of a marriage contract—are inescapably intertwined with public policy. The chancellor decided this litigation based upon the facts presented and the equity of the case. Accordingly, I would affirm the decree of the chancellor.