# Supreme Court of Kentucky

## 2005-SC-000750-MR

DATE Feb 23 07 E. W. A. Crouth D.C.

CLARENCE ROBINSON       APPELLANT

V.

APPEAL FROM LINCOLN CIRCUIT COURT
HONORABLE DAVID A. TAPP, JUDGE
05-CR-00033

COMMONWEALTH OF KENTUCKY       APPELLEE

## OPINION OF THE COURT BY JUSTICE McANULTY

## AFFIRMING IN PART, REVERSING AND REMANDING IN PART

A Lincoln Circuit Court jury convicted Clarence Robinson of three counts of second-degree rape, three counts of third-degree rape and one count of first-degree rape. Robinson committed all the offenses against S.M.H., whom Robinson married in Knox County, Tennessee when Robinson was 37 years old and when S.M.H. had just turned 14 years old and was six months pregnant with his child at the time of the marriage. In accordance with the jury's recommendation, the trial court sentenced Robinson to a total of 61 years in prison (10 years on each count of second-degree rape; five years on one count and three years on two counts of third-degree rape; and 20 years on the single count of first-degree rape to run consecutively). Thus, he appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Robinson presents two issues for our review. First, Robinson contends that the

trial court erred in denying his request that the jury be instructed under KRS 510.035 that no offense is committed if the parties are married to each other, regardless of the person's age solely because the other person is less than 16 years old. Second, Robinson argues that the trial court erred in directing a verdict as to the charge of first-degree rape as there was no evidence of forcible compulsion.

Our holding in this case is three-part. (1) We conclude that the trial court erred in refusing to instruct the jury under KRS 510.035 because the evidence was undisputed that Robinson and S.M.H. were married when S.M.H. was 14 years old. Thus, we reverse and remand as to the judgment of conviction for the charges of third-degree rape. (2) Because the parties were not married, however, until shortly after S.M.H.'s 14th birthday, we affirm the judgment of conviction on the three counts of second-degree rape as Robinson was not entitled to an instruction under KRS 510.035 for the time period preceding the marriage. (3) And we affirm the judgment of conviction on the single count of first-degree rape because under the evidence as a whole, it was not clearly unreasonable for a jury to find guilt.

### I. Facts Underlying the Convictions and Defense Trial Motions

The Commonwealth presented only two witnesses at Robinson's trial, S.M.H. and Detective Van Wright, with whom Robinson had a conversation about his marriage to S.M.H.

S.M.H. testified that she, her mother, and her siblings have lived in Robinson's home since S.M.H. was eight or nine years old. S.M.H.'s date of birth is February 15, 1986.

Robinson first had sexual intercourse with S.M.H. in October of 1998 when S.M.H. was 12 years old. On this occasion, Robinson picked up S.M.H. from a choral

-2-

program at her middle school (where S.M.H. was in seventh grade). Instead of driving S.M.H. straight home, however, Robinson took S.M.H. off on a country road and had sexual intercourse with her in his vehicle. After that, Robinson had sexual intercourse with S.M.H. three to four times a week in his vehicle.

In the late summer of 1999, S.M.H. conceived her first child with Robinson. At that point, S.M.H. was 13 years old. Six months later, on Saturday, March 18, 2000, S.M.H.'s mother, Robinson's mother, and Robinson took S.M.H. to Knox County, Tennessee. S.M.H.'s mother altered her birth certificate to appear that S.M.H. was 16 years old by changing her date of birth from February 15, 1986, to February 15, 1984. On the application for the marriage license, S.M.H. represented that she was 16 years old. She testified that she filled out the application as directed by the adults and did so because she thought that they would leave her in Tennessee if she did not do as instructed.

The county clerk issued a Tennessee marriage license, and Robinson and S.M.H. were married in a church by a minister. They did not have a honeymoon and did not tell anyone they were married. Their living arrangements continued as they had been before the marriage -- S.M.H., her siblings and her mother remained in Robinson's home. S.M.H. had a separate room in the house and did not take Robinson's last name, although she admits that she did use his last name on hospital records when she had her children.

S.M.H. gave birth to her first child, J.A.R., on June 9, 2000, when S.M.H. was 14 years old. No father is listed on J.A.R.'s birth certificate, but Robinson stipulated that DNA test results confirm that he is J.A.R.'s biological father.

After J.A.R. was born, Robinson started coming in S.M.H.'s room to have sexual

- 3 -

intercourse with her and would come in her room every night for that purpose.

S.M.H. gave birth to her second child, A.J.R., on July 28, 2002, when S.M.H. was 16 years old. No father is listed on A.J.R.'s birth certificate, but Robinson stipulated that DNA test results confirm that he is A.J.R.'s biological father.

After A.J.R. was born, Robinson continued to have sexual intercourse with S.M.H. He would threaten her and members of her family. If she would tell him "No," he would push her down until she gave in to him.

S.M.H. gave birth to her third child, C.M.R., on October 18, 2003, when S.M.H. was 17 years old. No father is listed on C.M.R.'s birth certificate, but Robinson stipulated that DNA test results confirm that he is C.M.R.'s biological father.

S.M.H. obtained her driver's license when she was 17. Once she did, she drove her children to their doctor's appointments at the health clinic. While there, she requested birth control shots. The last time Robinson had sexual intercourse with S.M.H. was in November of 2004.

On January 6, 2005, S.M.H. finally confided in social services after her children were removed from her home that Robinson had been having sexual intercourse with her since she was 12 years old. She stated the following on a domestic violence petition/motion:

> When I was 12 years old, Clarence forced himself on me and
> proceeded to have sexual intercourse with me, unwillingly, and has
> done so for the past six years. Throughout this time, I have also
> given birth to three children who belong to him. I am scared that he
> will harm my children, my siblings, and me. I feel this way because
> he said if I ever told anyone that I would regret it.

In connection with the domestic violence order, Detective Van Wright spoke with Robinson in the judge's chambers in the Lincoln County Judicial Center. Detective

-4-

Wright testified that Robinson told him that he and S.M.H. had gone to Tennessee to get married because that is what S.M.H. wanted.

Detective Wright also spoke with S.M.H.'s mother, Lisa Robinson, regarding S.M.H.'s allegations. Lisa Robinson stated that S.M.H. and Robinson were married because they loved each other, yet Lisa Robinson stated that she had had sexual intercourse with Robinson since he and her daughter had been married. (Lisa Robinson was indicted and tried jointly with Robinson for three counts of complicity to commit second-degree rape, three counts of complicity to commit third-degree rape, and one count of complicity to commit first-degree rape.)

At the close of the Commonwealth's case-in-chief, Robinson made a motion for a directed verdict of acquittal. He renewed his motion once he announced that he would not put on any proof. He also requested that the jury be instructed under KRS 510.035.

The trial court, in response, denied his motion for a directed verdict and his request for an instruction under KRS 510.035. As to KRS 510.035, the trial court held that a valid marriage was a prerequisite to the defense under KRS 510.035 and Robinson's marriage to S.M.H. was invalid for three reasons.

First, the trial court concluded that the marriage in Tennessee was in violation of at least three Tennessee statutes: (a) the county clerk did not wait the requisite three days under T.C.A. § 36-3-104(b)(1) before issuing the license; (b) under T.C.A. § 36-3-105(a), it is unlawful for a county clerk to issue a marriage license if one of the contracting parties is under the age of 16; and (c) T.C.A. § 36-3-106(a) requires the consent of the parent or guardian when either applicant is between the age of 16 and 18, yet the trial court found no consent in this case.

- 5 -

Second, the trial court concluded that the marriage was in violation of KRS 402.020. KRS 402.020(1)(f) states that a marriage is prohibited and void when at the time of the marriage, either person is under the age of 16, unless the female is pregnant, in which case permission to marry must be granted by the district court upon application.

Third, the trial court considered KRS 402.040, which states: "[i]f any resident of this state marries in another state, the marriage shall be valid here if valid in the state where solemnized, unless the marriage is against Kentucky public policy." The trial court reasoned that the state of Kentucky has a public policy of protecting those of tender years who wish to marry and that public policy is not furthered by permitting individuals to use marriage as a defense to avoid what would otherwise be criminal sexual contact.

## II. First Issue: Did the trial court err in refusing to instruct the jury under KRS 510.035?

Robinson's marriage to S.M.H. was voidable, not void. Thus, we conclude that the trial court erred in refusing to instruct the jury under KRS 510.035 for that time period when the parties were married.

While the trial court's analysis under KRS 402.040 seems just under the circumstances of this case, we cannot agree that the legislature has declared that the marriage of a female under the age of 16 is against the public policy of Kentucky. We reach this conclusion after considering and harmonizing the language of five Kentucky statutes: KRS 402.040, KRS 402.010, KRS 402.020, KRS 402.030, and KRS 510.035.

Because the parties married in Tennessee, the trial court properly considered KRS 402.040. KRS 402.040(1), as referenced above, announces the general rule that

- 6 -

an out-of-state marriage shall be valid in Kentucky if valid in the state where solemnized unless the marriage is against Kentucky public policy. KRS 402.040(2) affirms that same-sex marriages are against Kentucky public policy.

To determine if an underage marriage is against Kentucky public policy, we turn to KRS 402.010, KRS 402.020 and KRS 402.030. See Mangrum v. Mangrum, 310 Ky. 226, 220 S.W.2d 406, 407-408 (Ky. 1949) (construing KRS 402.010, KRS 402.020 and KRS 402.030 in connection with one another and with other statutes and holding that underage marriages are not void, but merely voidable); Holbert v. West, 730 F.Supp. 50, 53 (E.D. Ky. 1990) (relying on the holding in Mangrum and concluding that under Kentucky law, minor's marriage without parents' consent is merely voidable rather than void).

KRS 402.010 expressly declares void incestuous marriages.

KRS 402.020 is as follows:

> (1) Marriage is prohibited and void:
> . . .
> (f) 1. Except as provided in subparagraph 3. of this paragraph, when at the time of the marriage, the person is under sixteen (16) years of age;
> . . .
> 3. In case of pregnancy the male and female, or either of them, specified in subparagraph 1. or 2. of this paragraph, may apply to a District Judge for permission to marry, which application may be granted, in the form of a written court order, in the discretion of the judge. There shall be a fee of five dollars ($5) for hearing each such application.

Despite KRS 402.020's plain language that such a marriage is prohibited and void, KRS 402.030(3) states:

> At the instance of any next friend, courts having general jurisdiction may declare void any marriage where:
> (a) The person was under sixteen (16) years of age at the time of the marriage;

> (b) The marriage was not conducted with the permission of a District Judge, as required by KRS 402.020(1)(f)3., in the form of a written court order; and
>
> (c) The marriage has not been ratified by cohabitation after the person reached eighteen (18) years of age.

If the legislature had intended to declare an underage marriage against the public policy of the state, it would have made it absolutely void -- as it has done with incestuous marriages and same-sex marriages -- and it would not have enacted KRS 402.030.

Nor would it have allowed the defense under KRS 510.035 that is at issue in this case. KRS 510.035 is as follows:

> A person who engages in sexual intercourse or deviate sexual intercourse with another person to whom the person is married, or subjects another person to whom the person is married to sexual contact, does not commit an offense under this chapter regardless of the person's age solely because the other person is less than sixteen (16) years old or mentally retarded.

Interpreting these statutes in connection with one another, we conclude that a marriage of a person under the age of 16, which is in violation of KRS 402.020(1)(f), is voidable, not void. See Mangrum, 220 S.W.2d at 408. As such, the marriage is not against Kentucky public policy.

Likewise, as to the validity of the Tennessee marriage, the marriage was voidable, not void -- a circumstance which the Commonwealth concedes in this appeal. See Brown v. Brown, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000), permission to appeal denied, ("A marriage is voidable from the beginning (1) when either party was insane; or (2) the complainant was under duress; or (3) was under the age of consent; or (4) when the consent was obtained by force, or fraud, and was given by mistake; or (5) when the defendant was impotent; or (6) when the woman was pregnant by another

- 8 -

man without the knowledge of the complainant; or (7) when, for any other reason, the marriage was not binding on the complainant . . .'"). And a voidable marriage is valid and binding upon the parties until such time as it is annulled by a competent court. See Brewer v. Miller, 673 S.W.2d 530, 532 (Tenn. App. 1984).

Turning to the facts of this case, the evidence at trial established that Robinson and S.M.H. married in Knox County, Tennessee on March 18, 2000, when S.M.H. was 14. S.M.H. did not testify that the marriage had been annulled.

Given the fact of the marriage, Robinson requested that the trial court give an instruction on marriage as a defense to the second and third-degree rape charges. This preserved the error for review. See RCr 9.54. Upon review, we conclude that there was evidence to support the instruction on the third-degree rape charges, but not on the second-degree rape charges because S.M.H. testified that she and Robinson did not marry until about one month after her 14th birthday. See KRS 510.050. Robinson was not entitled to an instruction under KRS 510.035 for the time period preceding the marriage.

Upon review, this seems to be the case of a sophisticated child predator. In holding as we do today, we are not condoning this marriage. We are following the public policy as established by the legislature. "It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest. It is the prerogative of the legislature to declare that acts constitute a violation of public policy." Com. ex rel. Cowan v. Wilkinson, 828 S.W.2d 610, 614 (Ky. 1992).

Accordingly, we affirm the judgment in regard to Robinson's convictions and sentence for three counts of second-degree rape. However, we reverse and remand

for proceedings consistent with this opinion that part of his conviction and sentence for three counts of third-degree rape.

## II. Did the trial court err in refusing to grant a directed verdict on first-degree rape because there was no evidence of forcible compulsion?

Under the evidence as a whole, it was not clearly unreasonable for a jury to find guilt on the charge of first-degree rape. Thus, the trial court did not err in denying Robinson's motion for a directed verdict on that charge.

On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth, reserving to the jury all questions of credibility and weight of the evidence. See Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991); Commonwealth v. Sawhill, 660 S.W.2d 3, 4 (Ky. 1983). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." Benham, 816 S.W.2d at 187.

A conviction for first-degree rape, as it relates to this case, required the jury to find that Robinson engaged in sexual intercourse with S.M.H. by forcible compulsion. KRS 510.040(1)(a). As defined in KRS 510.010(2), "'[f]orcible compulsion' means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition."

Turning to S.M.H.'s testimony at trial, she stated that (1) Robinson would threaten her and members of her family, and (2) if she told him "No," he would push her down until she gave in to him. In addition, S.M.H. testified that in her application for a

domestic violence order she stated that (1) Robinson forced himself on her when she was 12 years old and proceeded to have sexual intercourse with her, unwillingly, and has done so for the past six years; and (2) she is scared that he will harm her children, her siblings, and her, because he said if she ever told anyone that she would regret it. This evidence was sufficient to establish forcible compulsion and to withstand a directed verdict. Thus, we affirm the judgment in regard to Robinson's conviction and sentence on the charge of first-degree rape.

For the reasons set forth above, we affirm the judgment of the Lincoln Circuit Court in regard to Robinson's convictions and sentence for three counts of second-degree rape and one count of first-degree rape. We reverse that part of the judgment in regard to his convictions and sentence for three counts of third-degree rape, and we remand for proceedings consistent with this opinion.

Graves, Minton, and Roach, JJ., concur. Wintersheimer, J., dissents by separate opinion in which Lambert, C.J.; and Scott, J., join.

COUNSEL FOR APPELLANT:

John Kevin West
McCoy, West & Franklin
309 North Broadway
P.O. Box 1660
Lexington, Ky 40588-1660

COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Samuel J. Floyd, Jr.
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Ky 40601

# Supreme Court of Kentucky

## 2005-SC-000750-MR

CLARENCE ROBINSON                                        APPELLANT

V.                     APPEAL FROM LINCOLN CIRCUIT COURT
                      HONORABLE DAVID A. TAPP, JUDGE
                      INDICTMENT NO. 05-CR-00033

COMMONWEALTH OF KENTUCKY                          APPELLEE

## DISSENTING OPINION BY JUSTICE WINTERSHEIMER

I respectfully dissent from Part II of the majority opinion in which the majority reverses and remands Robinson's conviction and sentence for three counts of third-degree rape. I simply cannot agree that upholding this marriage does not offend Kentucky's public policy due to the fraud perpetuated on Tennessee officials and the lack of true consent to the marriage by the child, S.M.H. The adults responsible for protecting S.M.H. purposefully altered her birth certificate and took her to another state for the marriage, where she was afraid she would be abandoned if she did not go through with the marriage. So I would hold that the trial court was correct in not regarding this marriage as valid and in refusing to give an instruction on marriage as a defense to the third-degree rape charges. I would affirm the trial court's judgment in all respects.

Lambert, C.J.; and Scott, J., join.