IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2007

## IN RE J.M.N.
## JERRY CLYDE NIX EX REL. JACY MARIE NIX
## v.
## AMY NIX CANTRELL

**An Appeal from the Juvenile Court for McNairy County**
**No. 8793     Van D. McMahan, Judge**

---

**No. W2007-00615-COA-R3-JV - Filed June 13, 2008**

---

This case involves a non-custodial parent's attempt to give consent for her fourteen-year-old daughter to get married. After the parties divorced, the father was designated the primary residential parent for the parties' daughter, and the mother had regular visitation. When the daughter was fourteen years old, the father took her to the mother's home for visitation. Without telling the father, the mother took the daughter and her eighteen-year-old boyfriend to the juvenile court below to seek permission to get married. At the juvenile court, the mother signed an affidavit consenting to the marriage. Based on the mother's affidavit, the juvenile court judge signed an order granting the daughter and her boyfriend permission to marry. They immediately obtained a marriage license and got married. After learning of the marriage, the father filed a motion in the juvenile court asking it to set aside its order giving the daughter permission to marry. After a hearing, the juvenile court granted the motion to set aside. It also held that setting aside the prior order rendered the daughter's marriage void. The mother now appeals. We affirm, concluding that the juvenile court did not abuse its discretion in setting aside its order giving the daughter permission to marry. Additionally, we note that the marriage is merely voidable, not void.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., joined; W. FRANK CRAWFORD, J., did not participate.

James N. Adams, Jr., Corinth, Mississippi, for the appellant, Amy Nix Cantrell.

Ken Seaton, Selmer, Tennessee, for the appellee, Jerry Clyde Nix.

# OPINION

Plaintiff/Appellee Jerry Clyde Nix ("Father") and Defendant/Appellant Amy Nix Cantrell ("Mother"), both Mississippi residents, were married and had a daughter, Jacy Marie Nix ("Jacy"), born August 27, 1991. Mother and Father were divorced by final decree entered on August 22, 1995, in the Chancery Court of Warren County, Mississippi. In the decree, Mother was designated the primary residential parent for Jacy.

Father later filed a petition for modification of the decree, seeking to be designated primary residential parent, based in part on Mother's mental illness. On August 26, 1999, the Mississippi chancery court entered an order granting Father's petition and appointing him as Jacy's primary residential parent. Mother was given the same visitation that had been awarded to Father in the original divorce decree.

At all pertinent times thereafter, Father has lived with Jacy at 585 Nix Road in Winona, Montgomery County, Mississippi. Mother lived about three hours away from Father at 449 Ramsey in Corinth, Alcorn County, Mississippi. Over the years, for Jacy's visitation, the parties met at a point in between their homes for the exchange.

On Friday, July 27, 2006, when Jacy was fourteen (14) years old, Father took Jacy for her regular visitation with Mother. Father was led to believe that Jacy would be going with Mother to vacation in Florida for the week. Instead, without notifying Father, Mother took Jacy across the Tennessee/Mississippi state line to the Juvenile Court in Selmer, McNairy County, Tennessee, to enable Jacy to marry her eighteen-year-old boyfriend, Kevin Brady Henry ("Henry"). When Mother, Jacy, and Henry arrived at the McNairy County Justice Center, Jacy and Henry sought to file an application for a marriage license. Because the legal age for marriage without parental consent in Tennessee is eighteen, and Jacy was only fourteen, Mother filled out a preprinted consent affidavit, acknowledging that she is Jacy's mother, that Jacy's birth date is August 27, 1991, and that she consented to and joined in the application for marriage between Jacy and Henry.

Thereafter, Wayne Bolton ("Bolton"), a youth services officer of the McNairy County Juvenile Court, met briefly with Jacy and Henry to ensure that they intended to be married. He then presented Mother's affidavit to Juvenile Court Judge Bob Gray. Along with Mother's affidavit, Bolton presented Judge Gray with a preprinted order finding that the marriage would be in Jacy's best interest, and that good cause was shown for the marriage. In addition, the pre-printed order suspended the three-day waiting period for the issuance of a marriage license, waived the age restriction to marriage, and authorized the County Court Clerk to issue a marriage license to Jacy and Henry. *See* T.C.A. § 36-3-107 (2005). Judge Gray signed the order proffered by the youth services officer. Mother, Jacy, and Henry did not appear before Judge Gray.

After obtaining Judge Gray's order, Mother, Jacy, and Henry went to the McNairy County Courthouse to apply with the County Court Clerk for a marriage license and to have the marriage ceremony performed. When Jacy and Henry applied for the license, a deputy clerk asked them for a copy of Jacy's birth certificate or some other record identifying her legal parents and her date of birth. Mother had no such records for Jacy with her. Instead, she showed the clerk the front page

of a proposed Mississippi chancery court order drafted by her attorney, which indicated that she had primary custody of Jacy. This order had never been signed by a court; it had merely been proposed by Mother's attorney in the prior Mississippi chancery court proceedings between Mother and Father. In any event, the county clerk's office accepted the unsigned order in lieu of other forms of identification and issued the marriage license. Thereafter, Jacy and Henry were married by the County Court Clerk.

A few days later, Mother called Father and informed him that Jacy and Henry had married. She told him that, as a result of the marriage, Jacy was emancipated and that he no longer had custody of her under the Mississippi chancery court order.

On August 22, 2006, Father filed a motion in the McNairy County Juvenile Court asking the Juvenile Court to set aside Judge Gray's July 27, 2006 order authorizing the County Court Clerk to issue a marriage license to Jacy. As the basis for his motion, Father asserted fraud on the court by Mother. Father later modified his position, claiming that the prior order could be set aside based on "good cause being shown," regardless of any fraud.

Father's motion was filed as an adversarial proceeding under the same docket number as Judge Gray's Juvenile Court order, No. 8793, naming Mother as the respondent. Mother filed a response, claiming that no fraud had been committed on the court and that Father's motion to set aside should be denied.

Also on August 22, 2006, Father, on behalf of Jacy, filed a petition in the McNairy County General Sessions Court for annulment of the marriage. This case was assigned General Sessions docket No. 7811. In this petition for annulment, Father named Henry as the defendant. On October 5, 2006, represented by the same attorney who represented Mother, Jacy filed an intervening petition in the McNairy County General Sessions action, asserting that she was legally married to Henry, that she was emancipated based on her marriage, and that she did not authorize Father to file the petition for annulment on her behalf. Jacy denied that fraud was committed in obtaining Judge Gray's Juvenile Court order, and she requested that Father's annulment petition be dismissed. On the same day, Henry filed an answer to Father's petition for annulment, claiming that he and Jacy were legally married and asking the General Sessions Court to dismiss Father's petition.

By this time, Judge Van McMahan ("Judge McMahan") had become both the Juvenile Court judge and the General Sessions judge for McNairy County. On October 9, 2006, Judge McMahan conducted a hearing on Father's Juvenile Court motion to set aside Judge Gray's order, as well as Father's General Sessions petition for annulment. Both matters were consolidated for purposes of the hearing "for the sake of judicial economy and based on the fact that the two separately filed cases arise from the same set of facts . . . ."

Father, Mother, Henry, and Jacy all testified at the hearing. Father testified that, prior to Jacy's marriage, he and Jacy lived together at his home on Nix Road in Winona, Mississippi. He said that, ever since he was designated as Jacy's primary residential parent in 1999, he and Mother had been having trouble. On several occasions, Father stated, Mother refused to return Jacy to him after her regular visitation, requiring Father to go retrieve Jacy.

Father testified that on Friday, July 27, 2006, he took Jacy to visit Mother for an extended time because he understood that they planned to go on a vacation to Florida. Father had never met Henry, or even heard of him, prior to learning of the events of July 27, 2006. He did not find out that Jacy and Henry were married until a few days after the ceremony when Mother called and told him that Jacy was emancipated based on her marriage. Father viewed Mother's facilitation of Jacy's marriage as another one of Mother's "stunts" to get custody of Jacy. He said that he filed his petition for annulment because he did not believe that it was in Jacy's best interest to be married at only fourteen years old.

Mother also testified at the hearing. She admitted that she had a history of mental illness and said that she suffered from depression. Mother also admitted that she had tried to take Jacy from Father's custody on a prior occasion.

Mother said that, since late May 2006 when Jacy's school year ended, Jacy had lived with her in Alcorn County, Mississippi. Mother asserted that, during the time period between May 2006 and July 27, 2006, Jacy spent a total of about seven nights with Father.

Mother testified that, in July 2006, Jacy told Mother that she suspected that she was pregnant, and asked Mother's permission to marry the prospective father. Mother claimed that Jacy took a pregnancy test, with inconclusive results. She did not take Jacy to see a physician for a pregnancy test and, as it turned out, Jacy was not pregnant. Nevertheless, Mother explained, she consented to Jacy's marriage to Henry because she felt that marriage was in Jacy's best interest in light of the possibility that she was pregnant. Mother said that she did not discuss the decision with Father because she and Father "had a very hostile relationship." Although both Jacy and Henry lived in Mississippi, Mother took them to Tennessee to be married to avoid the waiting period associated with the blood test that was required in Mississippi. Mother said that Jacy and Henry planned for the trip to Florida to be their honeymoon.

Mother then described the events that took place. According to Mother, about a week prior to July 27, 2006, she called the Juvenile Court Clerk's office and asked whether a noncustodial parent could give consent for a minor to be married. She claimed that one of the Juvenile Court clerks, Jean Smith ("Smith"), assured her that either parent could give consent regardless of who had primary custody. On July 27, 2006, when she, Jacy, and Henry arrived at the McNairy County Juvenile Court, Mother claimed that no one asked her whether she was Jacy's custodial parent. Mother filled out all of the paperwork presented to her by Smith. After that, they were sent to youth services officer Bolton. In Bolton's office, he talked with Jacy and Henry about their decision to marry. Bolton then left the room and returned with an order signed by Judge Gray giving them permission to marry. Mother, Jacy, and Henry did not personally appear before Judge Gray. Mother denied showing anyone in the Juvenile Court office the proposed Mississippi chancery court order indicating that she had custody, and she asserted that she was not asked for such documentation by Juvenile Court personnel.

Once they obtained Judge Gray's order from Juvenile Court, Mother took Jacy and Henry to the McNairy County Clerk's office to obtain a marriage license and get married. In order to obtain a marriage license, Henry presented to the County Clerk's office his birth certificate and

driver's license. Jacy was required to present a birth certificate or "something showing who her legal parents were and her date of birth." To fulfill this requirement, Mother gave the County Clerk's office the first page of her unsigned Mississippi proposed order, which recited Jacy's birth date and indicated that Mother was the primary custodian. Mother explained that she presented the first page of this order because it was all she had with her to show the identity of Jacy's parents. Once the marriage license was procured, the wedding ceremony took place there in the County Clerk's office.

A few days later, Mother called Father to tell him about Jacy's marriage. Mother testified that, at the time of the hearing, Jacy and Henry were living with her, and that Henry was not working.

Henry testified as well. He stated that he was not involved in the discussions with the clerks or with Judge Gray, but spoke only with Bolton, the Juvenile Court youth services officer, who interviewed the couple about their decision to marry. Henry testified that he told Bolton that he wanted to marry Jacy because he loved her and because marriage was what they believed was right. Henry refused to answer questions about whether he told Mother that Jacy was pregnant. At the time of the hearing, he said, he and Jacy were living with Mother. He planned to go into the National Guard. Henry testified that he did not wish to be divorced, and that divorce violated his religious beliefs.

Jacy also testified at the hearing. Prior to the marriage, she said, she lived primarily with Father and visited Mother. She acknowledged that there were substantial periods of time in which she did not visit Mother. Between May 24 and July 27, 2006, Jacy said, she stayed with Mother quite a bit. She corroborated Father's testimony that he took her to Mother's home on July 27, 2006, based on his understanding that she and Mother were going to go on vacation in Florida. Jacy said that it was her and Henry's idea to go to McNairy County to get married. A week before the three of them went to McNairy County, Jacy and Henry told Mother that they suspected that Jacy was pregnant. They told Mother that they loved each other and wanted to get married. Contrary to Mother's testimony, Jacy said that she did not take a pregnancy test. Jacy denied involvement in any misrepresentations to the Juvenile Court clerks, the Juvenile Court judge, or the County Court clerks in relation to this matter. She maintained that she wanted to remain married to Henry, and that she did not authorize Father to file the petition for annulment in General Sessions Court.

Over the objection of Mother's attorney, Judge Gray testified at the hearing. He said that he had no specific recollection of the matter involving Jacy and Henry, but that it was not uncommon for him to get requests for waiver of the age restriction for marriage. Judge Gray explained that it had been the Juvenile Court's "policy that a person . . . that's requesting the child to be married to make this affidavit that you have here and have some supporting documentation that that person had custody of that child if mother and father both didn't sign the affidavit." Judge Gray said that "if both parents did not come in to show proof that they were parents of this child, then the policy was that the one parent would be required . . . to provide proof that person had physical and legal custody of that child." He maintained that, without such documentation, he would not have signed the order permitting the marriage. Typically, he stated, he would not see the person making the affidavit because having the affidavit signed is "an administrative function done by one of the youth services

officers." Judge Gray said that, in most cases, the youth services officer was the person who presented the petition to the court, and the judge signed the order.

At the conclusion of the hearing, Judge McMahan orally granted Father's motion to set aside the July 27, 2006 order. Judge McMahan determined from the evidence that it was inappropriate for Mother to make the decision to allow Jacy to get married at age fourteen without notifying Father:

> I think it's significant in this case that we're dealing with, at the time a 14-year-old. I think it's clear that the father, the person that has custody, I think both parents should have a say in that decision. That's a huge decision for parents to make in the lives of their children. And for one parent to go and make it without notifying the other parent, that's just not right. You shouldn't do that.
>
> I don't think the statute – I think based upon Judge Gray's testimony, the policy procedure of the Court in Juvenile Court has been that if both parents aren't there, then one parent's got to present evidence that they have custody. So . . . I don't think Judge Gray at that point would have granted this Motion had it not been – if he did not believe that Mrs. Cantrell had custody. Now, I believe the Court has basis to set this aside regardless of whether there's any fraud or not.
>
> There's a Motion to Set Aside the Judgment that was timely filed, the Order was dated July 27th, this Motion was filed on August 22nd of 2006 . . . [.] [N]ow the Motion doesn't state whether Mr. Seaton is proceeding on the Juvenile Rules of Procedure or the Civil Rules of Procedure. . . . [I]t doesn't matter, under either rule of procedure, there's sufficient basis for this Motion to be granted. And the Court considers the best interest of the child as one of the grounds for overturning this Motion.
>
> I think it's in the best interest of this child that she not be married at age 14. At least not without the consent of both parents. So the Court finds that the Motion to Set Aside should be granted based upon both the Rules of Juvenile Procedure and the Rules of Civil Procedure.

After setting aside the July 27, 2006 order, Judge McMahan stated that doing so had the effect of rendering Jacy's marriage void and the petition for annulment moot.

On November 21, 2006, Judge McMahan entered a written order consistent with his oral ruling. The written order is captioned "in the Juvenile Court for McNairy County, Tennessee" and lists Juvenile Court docket No. 8793. The order states that the matter was heard by "Judge Van D. McMahan, sitting as the Juvenile Court Judge of McNairy County, Tennessee . . . ." It references pleadings filed "in General Sessions Court," without listing the docket number of Father's General Sessions petition for annulment. It states:

> [F]or the sake of judicial economy and based on the fact that the two separately filed cases arise from the same set of facts, the General Sessions Court Complaint for Annulment, Answer and Intervening Petition should be consolidated to be heard

along with the Motion for an Order Setting Aside the Court's Order waiving the age requirement for marriage, all of which should be heard by the Juvenile Court.

Judge McMahan's written order granted Father's Juvenile Court motion to set aside the July 27, 2006 Juvenile Court order and went on to state that "Jacy Marie Nix is not of legal age to be married in Tennessee, and . . . her marriage to Kevin Brady Henry is now void." Mother now appeals the Juvenile Court's order.[1]

On appeal, Mother contends that the trial court erred in setting aside the July 27, 2006 order, asserting that there was no evidence that she committed a fraud upon the court in obtaining the order. Mother claims that she had received assurances from Smith and Bolton that consent of the minor's custodial parent was not necessary, and she maintains that she did not hold herself out to the Juvenile Court to be Jacy's custodial parent. She notes that Bolton presented the affidavit and the preprinted order to Judge Gray, and that neither she, nor Jacy, nor Henry personally appeared before Judge Gray. Mother acknowledges that she showed the first page of the proposed Mississippi chancery court custody order to the county clerk's office, but maintains that she did so only for identification purposes, and asserts that she did not show the proposed order to either Smith or Bolton. Mother also argues that the trial court committed reversible error in permitting Judge Gray to testify in the proceeding below, asserting that his testimony was adduced in order to directly attack an order entered by him in the same proceeding and, as such, was improper pursuant to Tennessee Rule of Evidence 605.

The July 27, 2006 order was issued by the McNairy County Juvenile Court pursuant to Tennessee Code Annotated § 36-3-107, which provides:

> . . . [U]pon good cause, the judge of the probate, juvenile, circuit or chancery court . . . shall have the power to suspend the three-day period prescribed in § 36-3-104 or in such person's judgment remove the restriction as to age herein set out, and to authorize the county clerk to issue a marriage license regardless of the waiting period or age limit.

Accordingly, in matters regarding the permission of minors to marry, the Juvenile Court has concurrent jurisdiction with the probate, circuit, and chancery courts.

Depending on the nature of the proceedings, matters in Juvenile Court may be governed by the Tennessee Rules of Juvenile Procedure, the Tennessee Rules of Criminal Procedure, or the Tennessee Rules of Civil Procedure. *See* Tenn. R. Juv. P. 1(b). In matters in which the Juvenile Court exercises jurisdiction concurrent with the circuit and chancery courts, such as the case at bar, the proceedings are generally governed by the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 1.

---

[1] Mother initially appealed to the McNairy County Circuit Court, but the circuit court determined that it did not have jurisdiction over the matter and transferred the appeal to this Court pursuant to Tennessee Code Annotated § 16-4-108 (1994).

-7-

Thus, Father's motion to set aside the Juvenile Court's prior order would be governed by the Tennessee Rules of Civil Procedure. While Father's motion does not cite Rule 60.02, Father seeks relief from the Juvenile Court's order. Because we view motions in accordance with their substance, we consider Father's motion to be a Rule 60.02 motion. *Dunlap v. Dunlap*, 996 S.W.2d 803, 812 (Tenn. Ct. App. 1998). We review a trial court's decision to grant or deny relief pursuant to Rule 60.02 under an abuse of discretion standard. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

The motion filed by Father initially would be considered to be based on subsection (2) of Rule 60.02 of the Tennessee Rules of Civil Procedure, which authorizes a trial court to set aside a judgment or order based on fraud. Father's position was later modified, however, and he argued that the order could be set aside based on "good cause shown," regardless of any fraud. The modified motion would be considered under subsection (5) of Rule 60.02, which provides that an order entered by a court may be set aside based on "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02(5).

In this case, it is undisputed that, in entering the July 27, 2006 order, Judge Gray could have relied only on the affidavit signed by Mother and presented by Bolton in finding "good cause" for the marriage and in finding that marriage would be in Jacy's "best interest."[2] When Father filed a timely motion to set aside the order, however, the trial court held a hearing and was presented with evidence that Father was Jacy's primary residential parent, that Mother did not have decision-making authority regarding Jacy, that Father was not notified of Mother's actions, and that Mother had a history of mental illness and of attempts to usurp Father's authority in decision-making matters involving Jacy. The evidence of these facts was not before Judge Gray when he signed the July 27, 2006 order. From this, Judge McMahan determined that setting aside the order giving Jacy permission to marry was warranted. The evidence adduced at the hearing before Judge McMahan is ample justification for granting relief from the order. Even if the admission of Judge Gray's testimony was erroneous, it is harmless error in light of the undisputed facts of this case. Therefore, we conclude that the Juvenile Court did not abuse its discretion in setting aside the July 27, 2006 order giving Jacy permission to marry.

As noted above, Judge McMahan consolidated Father's motion to set aside with the General Sessions petition for annulment only for purposes of the hearing; there was no order entered under the General Sessions docket number transferring the matter to Juvenile Court or otherwise disposing of the General Sessions petition. Thus, the only matter on appeal is Judge McMahan's decision, as the Juvenile Court judge, to set aside the July 27, 2006 order. It may be that the parties believed it was unnecessary to bring Father's petition for annulment to resolution in light of Judge McMahan's

---

[2]Because the order was ultimately set aside, it is not necessary for this Court to address the procedure followed by the Juvenile Court in making a determination regarding the "best interest" of the fourteen-year-old child. We are concerned, however, that the procedure for doing so appears from the record to be cursory and somewhat perfunctory. There appears to be no requirement that the parties, all residents of Mississippi, make a personal appearance before the court, or other safeguards to protect the minor from the undue influence of others or from her own lack of maturity. The propriety of the Juvenile Court's procedure, however, is not a matter before this Court at the present time.

statement that the marriage between Jacy and Henry "is now void."[3] Thus, we feel compelled to address the correctness of this comment.

The Juvenile Court's July 27, 2006 order legally removed the age restriction of marriage for Jacy and permitted her to legally obtain a marriage license. Setting aside this order vacated the court's waiver of the age restriction. Jacy was then relegated to the status of a minor who was not entitled to be married legally in Tennessee. This does not, however, change the fact that Jacy in fact obtained a marriage license and married Henry at the County Clerk's office.

In Tennessee, a marriage between and minor and an adult is voidable, not void. *Coulter v. Hendricks*, 918 S.W.2d 424, 426 (Tenn. Ct. App. 1995) (listing marriage of person who is under the age of consent as a voidable marriage); *see also Brown v. Brown*, 29 S.W.3d 491, 494-95 (Tenn. Ct. App. 2000) (same, relying on *Coulter*). "A voidable marriage differs from a void marriage in that the former is treated as valid and binding until its nullity is ascertained and declared by a competent court." 18 TENN. JUR. *Marriage* § 4 (2005) (footnote omitted; citing *Brewer v. Miller*, 673 S.W.2d 530 (Tenn. Ct. App. 1984)). If either party is under the age of consent at the time of the marriage, "the marriage is inchoate and voidable. Thus, a ceremonial marriage where a party is under [the age of consent] is valid until set aside." *Id.* (footnote omitted; citing *Warwick v. Cooper*, 37 Tenn. (5 Sneed) 659 (1858)). Indeed, the marriage of underage parties may be ratified or disaffirmed by them upon attaining the age of consent if the marriage is not annulled before that time. *See id.* "If the marriage is ratified, it is not necessary that it be again solemnized; a continuance of the relation after attaining the age of consent is a ratification of the voidable marriage." *Id.* Thus, until the marriage between Jacy and Henry is annulled or otherwise rendered void by a court of competent jurisdiction before Jacy reaches the age of consent,[4] it remains valid, and Henry and Jacy remain husband and wife.

The decision of the Juvenile Court is affirmed. Costs on appeal are to be taxed to Appellant Amy Nix Cantrell and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[3] Because the Juvenile Court order being appealed disposes only of Father's motion to set aside the Juvenile Court's July 27, 2006 order, the trial court's statement that the marriage is "void" appears to be *obiter dictum*.

[4] We express no opinion on whether the McNairy County General Sessions Court is a court of competent jurisdiction to annul or otherwise render the marriage a nullity.