Bryant *et al. v.* Townsend.

(*Knoxville*, September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

FRED L. MYERS, Newport, and SUSONG PARVIN, FRAKER & ROGAN, Greeneville, for complainants.

CRAWFORD & HURD, Newport, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The bill in this cause was filed against Gypsey Townsend Bryant, the widow of George W. Bryant, after his death, to annul her marriage to him on the ground that at the time of the marriage Bryant was *non compos mentis* and that the defendant widow had been guilty of fraud on the *non compos mentis* in bringing about the marriage. The complainants are the brothers, sisters,

and a nephew of the dead husband, who, since he died intestate, are his heirs and next of kin. The Chancellor sustained a demurrer to the bill and the complainants have appealed.

After stating the relationship of the parties, the bill alleged that, on September 18, 1947, the defendant had contracted a marriage with George W. Bryant which was "reflected in the records of the County Court Clerk's office in Cocke County, Tennessee;" that the defendant knew that the said George W. Bryant was of unsound mind at the time of said marriage; that Bryant had been insane for "at least two or three years" prior to said marriage; and that some six weeks after the marriage, Bryant committed suicide, dying intestate in Cocke County on October 30, 1947. It was admitted in argument that Bryant had never been adjudged a person of unsound mind, and that no guardian had been appointed for his person or property, and the bill alleges no irregularity or defect in the marriage as it was recorded in the records of the County Court Clerk. From other allegations in the bill, it is to be inferred that the marriage was consummated and that the parties to it lived together from September 18th to October 30th, 1947. The bill was filed on December 18, 1947.

The defendant filed a demurrer which, as amended, presented six grounds, but the essential questions presented by the appeal are in the sixth ground, which is as follows: "Because the contract of an insane person is at the most merely voidable and not void, unless it affirmatively appears that such person had been adjudged insane prior to the time such contract was entered into; and said bill not alleging that the said George W. Bryant had been adjudged a person of unsound mind, or insane,

prior to entering into said marriage contract, said marriage, under the allegations of said bill, was at the most, merely voidable and not void. This being true, the validity of said marriage is not now open to attack in the manner and form attempted by the complainants' bill— it appearing from said bill that said marriage had been dissolved by the death of the said George W. Bryant prior to the filing of said bill.''

The Chancellor sustained all grounds of the demurrer and dismissed the bill.

The complainants' position on the appeal is that the marriage is to be tested by the rules of the common law, and that so tested, it was void *ab initio*. The position of the Defendant is that the marriage is to be tested by the statute law of Tennessee, and that so tested, if there was any defect in the marriage, it was voidable merely, and the right to make an attack upon it died with the person of George W. Bryant, the person who had been defrauded.

The law of marriage in Tennessee is not controlled by rules of the common law, but is a matter of statute. Since 1829, this Court has frequently so held.

''The more important provisions of these acts of Assembly are almost entirely the same, exhibiting a settled purpose to fix and regulate the contract of marriage so as to rest or be dependent on municipal law alone; establishing a system intended to be complete in itself, evidence by the attention paid to every particular, in form as well as substance, which the importance of such a relation, both in a private and a public view, so deservedly merited. Hence, these acts of Assembly, as was intended by them, operate and effects a change in the form and substance of the marriage contract, and its solemnization, from what it was at the common law. . . . we say, that

these requirements, under these circumstances, constitute such a body of proof, as to render irresistible in our opinions, the correctness of the position, that a marriage, to be valid, must be according to these acts, and that the common law is wholly superseded on the same subject by them." *Bashaw* v. *State*, 9 Tenn. 177, 183-184.

"Accordingly, since the year 1741, at the least, the common law mode of constituting a legal marriage is of no validity here. This point was examined at some length in the case of the *State* v. *Bashaw*, 1 Yerg. Rep. 177, and this conclusion arrived at and sustained by the court." *Grisham* v. *State*, 10 Tenn. 589, 592.

"We are, therefore, satisfied, and hold, that it was the intention of the general assembly, in enacting the provisions of the Code of 1858 upon the subject under consideration, to abrogate the common law in relation to marriages, and provide a new and exclusive manner in which such contracts should be made." *Smith* v. *North Memphis Sav. Bank*, 115 Tenn. 12, 31, 89 S. W. 392, 396.

The decision of *Smith* v. *Bank, supra,* has been so often cited and so frequently followed by this Court that no subsequent citation is necessary, to show that it is still the law of Tennessee.

██ Specifically, in the case of *Cole* v. *Cole*, 37 Tenn. 57, 70 Am. Dec. 275, it was held that where a marriage was attacked on the ground of the insanity of the woman who had not been adjudged *non compos mentis*, that the marriage was voidable and not void, and that the marriage could be ratified by her in a subsequent lucid interval. Had the marriage been void *ab initio*, obviously it could not have been later ratified, since in legal contemplation, it had never occurred.

■ We have no statute that prohibits or annuls the marriage of an insane person. The only applicable provision of our statutory law is that of the present marriage licensing law, which forbids the Clerk to issue a license when one of the parties is a known lunatic or imbecile, Section 3, Chap. 81, Public Acts of 1937, but disregard of this provision does not render the marriage void but merely voidable after an appropriate proceeding. *Keith* v. *Pack*, 182 Tenn. 420, 423, 187 S. W. (2d) 618, 159 A. L. R. 101.

Appellants cite and attempt to rely on *Deihl et al.* v. *Jones et al.*, 170 Tenn. 217, 94 S. W. (2d) 47. In several essential and fundamental particulars, that case is distinguishable from the case before us. There, an ex-soldier, who had been adjudged *non compos mentis* and who had had a guardian appointed for his person and property in Tennessee, went to Georgia, and there married. A child was born of the marriage. Under Georgia law, Code Section 53-102 Civ. Code 1910, Section 2931, the marriage was void because of the mental disability of the father. This Court held only that the child was legitimate on account of the saving provisions of Tennessee Code Section 8453. The effect of the holding by the Chancellor and Court of Appeals that the marriage was void (that question was not presented on the appeal to the Supreme Court) was merely that the validity of the marriage was to be determined by Georgia law, where by express statute, the marriage was void. *Bell* v. *Bennett*, 73 Ga. 794; *Medlock* v. *Merritt*, 102 Ga. 212, 29 S. E. 185.

■ The case before us is essentially different. George W. Bryant had never been adjudged insane, nor had a guardian been appointed for his person and property. His marriage with defendant was a Tennessee mar-

riage, and so far as the bill shows, all statutory requirements of Tennessee law had been complied with in its celebration. The validity of the marriage here assailed is, therefore, to be determined by Tennessee law. *Pennegar et al.* v. *State*, 87 Tenn. 244, 10 S. W. 305, 2 L. R. A. 703, 10 Am. St. Rep. 648. ". . . in the interest of social order, the presumption in favor of the marriage is very strong, and the pressure of that presumption is felt at every stage of the inquiry." *Gamble* v. *Rucker*, 124 Tenn. 415, 417, 137 S. W. 499.

Finally, not only do we hold that the marriage if subject to attack, was voidable and not void, but we think the Chancellor correctly sustained the demurrer to the bill for lack of equity. Complainants allege that George W. Bryant had been *non compos mentis* for two or three years prior to the marriage and that, "on occasions, he had sought to induce or hire people to kill him, or to take his life." It is averred in the bill that these were matters of common knowledge, and yet knowing them, the complainants, who are brothers and sisters of Bryant, took no steps to have a guardian appointed for the protection of his person and property. Furthermore, Bryant lived for six weeks after the marriage, and they took no steps during Bryant's lifetime to avoid the marriage. The basis for estoppel and laches against complainants here, is stronger than those stated and applied in the case of *White* v. *Williams*, 159 Miss. 732, 132 So. 573, 76 A. L. R. 757.

For the reasons stated, and under the authorities cited, the assignments of error are overruled and the decree affirmed at the cost of the appellants.

All concur.