# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 20, 2014 Session

## IN RE ESTATE OF BETTY D. GENTRY MEEK

**Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV PB 12-72      Laurence M. McMillan, Chancellor**

_____

### No. M2013-01070-COA-R3-CV - Filed June 4, 2014

_____

The surviving husband who was excluded from his wife's will filed a petition for elective-share, year's support, exempt property, and homestead. The executors of her estate opposed the petition claiming the marriage was void ab initio because it was procured by fraud and misrepresentations, specifically alleging that he lied on the marriage license about his age and number of prior marriages. Alternatively, if he is the surviving spouse, they contend he is equitably estopped to assert such claims for the same underlying reasons. The trial court summarily dismissed the petition finding "(1) the marriage between [Plaintiff] and the Decedent was void ab initio due to the fraud perpetrated by [Plaintiff] in connection with false information supplied by him on the application for the parties' marriage license; and (2) equitably estopped as a matter of law." Based on these findings the trial court dismissed all claims. We have determined the marriage was not void ab initio; whether the marriage was voidable is now moot for any right to avoid the marriage abated upon the wife's death. As for equitable estoppel, we have determined that summary judgment was inappropriate because essential facts are either disputed or not in the record, including whether the decedent relied on the misrepresentations to marry him. Accordingly, we reverse the award of summary judgment and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Patrick Matthew Potempa, Nashville, Tennessee, for the appellant, The Estate of Paul H. Meek, Sr.

Larry B. Watson, Clarksville, Tennessee, for the appellees, John L. Mitchell and Katherine Young.

**OPINION**

Paul H. Meek, Sr. ("Plaintiff") was born on November 27, 1927. Betty D. Gentry Meek ("the decedent") was born on June 5, 1930. They both grew up in Clarksville, Tennessee and, although Plaintiff was two years older than the decedent, they attended Clarksville High School at the same. It is undisputed that they were friends at the time but it is disputed whether they were sweethearts in high school. She graduated in 1947; whether he graduated is not in the record.

Thereafter, the decedent married Charles C. Gentry, Sr., with whom she had four children; they remained in the Clarksville area throughout their marriage of more than fifty years. Mr. Gentry died in February 2002.

The record suggests that Plaintiff and the decedent had little if any contact until 2005, with the exception of the decedent's fiftieth high school reunion in 1997, when the decedent was accompanied by her husband Charles Gentry, and Plaintiff was accompanied by his wife. The reason the decedent and Plaintiff seldom if ever saw each other after high school is that Plaintiff spent most of his adult life in Florida.

As noted above, Charles Gentry, the decedent's husband of fifty years, died in 2002. Some three years later, after learning of Mr. Gentry's death, Plaintiff appeared at the decedent's home in 2005 and proclaimed his love for the decedent. He stated that he had waited all of his life to be with her. The decedent was obviously moved by such proclamation, because she and Plaintiff began spending a lot of time together, courting so-to-speak, a term that was popular in their youth.[1]

Early in the relationship, Plaintiff proposed marriage but before they got married, the decedent discovered that Plaintiff was married to Sharon Pitts who, at the time, was residing in California. Although the decedent was initially most upset, she obviously forgave him for not only did the decedent remain in the relationship, she allowed Plaintiff to reside with her in her home in Clarksville.

While still married to Ms. Pitts, Plaintiff asked the decedent to buy a home for them in Florida, where he had been living for years, so they could live together part of the year in Florida and the rest of the year in Clarksville; however, he also recommended that she put the title to the Florida home in her name only until he could divorce Ms. Pitts so Ms. Pitts

---

[1]Courtship is described as the activities that occur "when people are developing a romantic relationship that could lead to marriage or the period of time when such activities occur; the act, process, or period of courting." *Merriam-Webster*, http://www.merriam-webster.com/dictionary/courtship.

would have no claim to that house. Using her own funds, the decedent purchased a home in Florida, which was initially titled in her name only; the house cost $323,000 and the decedent purchased it with a down payment of $101,580.78.

Plaintiff divorced Ms. Pitts on July 10, 2006. Five weeks after divorcing Ms. Pitts, Plaintiff and the decedent applied for their marriage license. Although Plaintiff had been married seven previous times, he wrote on the marriage application that he had three prior marriages. He also listed his birth date on the marriage license as "11-18-34", and his age as "71", although he was born on November 27, 1927, and was 78 years old at the time.

Four days later, on August 19, 2006, the decedent and Plaintiff got married in Clarksville; several of the decedent's friends and relatives attended the wedding.

After the marriage, the decedent executed a deed to convey joint title to the Florida home in both her name and Plaintiff, with the right of survivorship. The record also shows that the decedent purchased a vehicle for Plaintiff, the title to which was put in his name only. Plaintiff also purchased another vehicle using the decedent's credit card. The title to this vehicle was in both names with right of survivorship.

Other than the undisputed fact that the decedent and Plaintiff held themselves out as being a happily married couple, the record is relatively silent concerning what occurred during the rest of the marriage, which lasted five years and seven months.

The decedent died on March 12, 2012, approximately two weeks after undergoing back surgery. Although it is not clear, it appears from the record that at the time of decedent's death, Plaintiff was incapacitated and living with his family in Florida.

The affidavit of the decedent's daughter reveals that immediately after her mother's death, she contacted Plaintiff asking him to sign the Consent Order for the disposition of her remains, which was necessary as he was the surviving spouse. He either refused to consent or failed to sign the form; in any event, the decedent's children were forced to have the funeral without her ashes or body. Plaintiff subsequently signed the Consent Order and the decedent's remains were cremated eleven days after her death.

The decedent's Last Will and Testament, which expressly excluded Plaintiff as a beneficiary, was admitted to probate on March 20, 2012, in the Montgomery County Chancery Court; John L. Mitchell and Katherine Young ("the Executors") were appointed co-executors of her estate.

On March 28, 2012, Plaintiff filed a petition for Elective-Share, Year's Support, Exempt Property, and Homestead; he filed an amended petition on April 18, 2012.[2] The Executors filed an answer to the Amended Petition denying all claims and asserting that the purported marriage was void ab initio and Plaintiff should be estopped from asserting his claims. The Executors contended Plaintiff had a history of lies and deception that repeated itself with his pursuit of the decedent.[3]

The Executors subsequently filed a Motion for Summary Judgment seeking to dismiss all claims on the following grounds: the marriage was void ab initio as a result of Plaintiff providing intentionally false, misleading, and fraudulent information on the marriage application in violation of Tenn. Code Ann. § 36-3-104, which they contend constitutes a Class C misdemeanor under Tenn. Code Ann. § 36-3-112; and based upon equitable estoppel.

The motion for summary judgment was heard on April 5, 2013. In an order entered on April 16, 2013, the trial court summarily dismissed the petition on two grounds, finding the marriage was void ab initio, due to fraud perpetrated by Plaintiff in connection with the false information on the marriage application, and equitable estoppel.

---

[2]In both petitions he claimed, *inter alia*, a 30% elective-share (the percentage share for marriages of six to nine years), although they had been married for less than six years when the decedent died. Because they were married for only five years, the appropriate elective-share percentage would be 20%. *See* Tenn. Code Ann. § 31-4-101.

[3]The Executors rely on the following facts, *inter alia*, to establish Plaintiff's history of lies, deception, and predatory conduct. Plaintiff married Ms. Pitts in February 1989. When Ms. Pitts first met Plaintiff, he represented to her that he had no previous marriages and no children; however, she later found out that he had been married two times and had five children who lived in Florida. Ms. Pitts ended the relationship and moved away, but sixteen years later Plaintiff and Ms. Pitts rekindled their relationship. Before Plaintiff and Ms. Pitts married, he admitted to her that he had been married three times, but failed to disclose a fourth marriage, and that he had six children. However, Plaintiff did not disclose to Ms. Pitts or Ms. Gentry that one of his sons had been convicted of first degree murder and rape. Ms. Pitts stated that Plaintiff was very charismatic and pleasing to be around, but at the same time, he also had an evil side and frequently lied about numerous things. Ms. Pitts stated that during their marriage, Plaintiff tried to get her to purchase a home in Florida for him and his children, but she never agreed. Ms. Pitts said "[Plaintiff] ruined my life and took everything I had, except the California condo," which she had previously purchased. Further, although the Plaintiff told Ms. Gentry he had done well financially, she paid the majority of his expenses and also bought him two vehicles. Further, at the request of Plaintiff, she bought a second home in Florida which was purchased with her funds and was initially put in her name alone; the Executors contend this was done to avoid Ms. Pitts from receiving any interest in the home. After the Plaintiff divorced Ms. Pitts, the home was transferred into both Ms. Gentry and the Plaintiff's names with the right of survivorship.

Plaintiff appeals contending the marriage was not void, merely voidable. Plaintiff also contends that the right, if any, the decedent may have had to avoid the marriage abated at her death. Plaintiff also contends the trial court erred in finding that he was equitably estopped to assert his claims.

## STANDARD OF REVIEW

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04.

To be entitled to summary judgment, the moving party who does not bear the burden of proof at trial shall prevail if it submits affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrates that evidence provided by the nonmoving party is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101.

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). The resolution of a motion for summary judgment is a matter of law, thus, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). The appellate court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1977).

## ANALYSIS

We begin our analysis mindful of the sound social principle and public policy espoused by our Supreme Court more than one hundred years ago: "In the interest of social order, the presumption in favor of the marriage is very strong, and the pressure of that presumption is felt at every stage of the inquiry." *Gamble v. Rucker*, 137 S.W. 499 (Tenn. 1911). It is also well established that "the law of marriage in Tennessee is not controlled by rules of the common law, but is a matter of statute." *Bryant v. Townsend*, 221 S.W.2d 949, 950 (Tenn. 1949). Furthermore, due to public policy concerns, "the State is an unofficial 'third party' to every divorce or annulment." *Guzman v. Alvares*, 205 S.W.3d 375, 381 (Tenn. 2006) (citing *Johnson v. Johnson*, 16 So.2d 401, 404 (Ala. 1944)).

The Executors, being the party challenging the validity of the marriage, bear the burden of rebutting the presumptions by providing "cogent and convincing" evidence that the marriage was invalid. *Guzman*, 205 S.W.3d at 380 (citing *Aghili v. Saadatnejadi*, 958 S.W.2d 784, 789 (Tenn. Ct. App. 1997).

## I. VOID OR VOIDABLE MARRIAGES

The Executors contend the marriage was void ab initio. Plaintiff contends it was not void, merely voidable. We therefore begin our analysis by recognizing the distinction between a void marriage and a voidable marriage.

A marriage that is void is a nullity from the beginning "as if it had never been." *Brown v. Brown*, 29 S.W.3d 491, 494-495 (Tenn. Ct. App. 2000) (classifying marriages prohibited by law as void from the beginning); *Gordon v. Pollard*, 336 S.W.2d 25, 27 (Tenn. 1960) (recognizing that a marriage prohibited by statute is void "as if it had never been"). Bigamous marriages, for example, are void from the beginning because they are prohibited by statute. *See Gordon v. Pollard*, 336 S.W.2d 25, 27 (Tenn. 1960).

"A voidable marriage differs from a void marriage in that the former is treated as valid and binding until its nullity is . . . declared by a competent court." *Brewer v. Miller*, 673 S.W.2d 530, 532 (Tenn. Ct. App. 1984) (citing *MacPherson v. MacPherson*, 496 F.2d 258, 262 (6th Cir. 1974)). A voidable marriage is a valid marriage until avoided by appropriate legal proceeding. *See Woods v. Woods*, 638 S.W.2d 403, 405 (Tenn. Ct. App. 1982) (stating the marriage was "a valid marriage which at most was voidable because of the impotence of the deceased and was valid until avoided by the legal proceeding instituted by defendant.").

### A. VOID MARRIAGES

A marriage is void ab initio if it is entered into:

(1) when either party was already lawfully married;
(2) . . .
(3) when the parties are within prohibited degrees of kinship; or
(4) *when, for any other reason, the marriage was prohibited by law, and its continuance is in violation of law*.

*Coulter v. Hendricks*, 918 S.W.2d 424, 426 (Tenn. Ct. App. 1995) (quoting 2 Gibson's Suits in Chancery § 1147 note 10 (5th ed. 1956)) (citations omitted) (emphasis added).

The Executors contend "the marriage was prohibited by law, and its continuance is in violation of law" and, therefore, void because Plaintiff falsely signed the application for marriage. In making this assertion the Executors rely on what they believe is the combined effect of two statutes. One is Tenn. Code Ann. § 36-3-112, which states that "fraudulently signing or knowingly using any false document purporting to be one provided for in . . . [a marriage license application] . . . is a Class C misdemeanor." The other is Tenn. Code Ann. § 36-3-306, which states that "[n]o marriage shall be valid, whether consummated by ceremony or otherwise, if the marriage is prohibited in this state." We find no merit to this contention.

It is undisputed that Plaintiff misrepresented his date of birth, age, and number of prior marriages when he completed and signed the application for a marriage license and Tenn. Code Ann. § 36-3-112 states that one commits a misdemeanor by doing such. Thus, Plaintiff may have committed a misdemeanor; however, the Executors have cited no authority that states that the resulting marriage was "prohibited by law," or that the continuance of the marriage "is in violation of law," which are essential to hold the marriage void instead of voidable. To the contrary, the fact that Plaintiff fraudulently signed the application may provide grounds to rescind or annul the resulting marriage, but that fact alone does not render the marriage a nullity as if it never occurred.

Our public policy would never condone the potential consequences, indeed abuses, that could result if we accepted the Executors' novel theory. For example, an honorable lady faithfully enters into a marriage not knowing that her spouse fraudulently signed the marriage application and then, years later, her spouse insists the marriage was void ab initio, that she was never married, despite the fact her "marriage" was presided over by a minister and witnessed by family and friends who attended the wedding.

The Executors have not identified any statute that *prohibited* the marriage of Plaintiff and the decedent. Indeed, the statute the Executors rely on does not prohibit their marriage, it merely prohibited the *fraudulent signing of an official document*. Thus, Plaintiff's act of fraudulent signing and/or providing false information on the marriage application did not prohibit the marriage. It may, however, have provided the decedent with grounds for the annulment of the marriage. Accordingly, because the parties' marriage was not prohibited by statute, it was not void, merely voidable. *See Coulter*, 918 S.W.2d at 427 (When a marriage is not prohibited by statute and the grounds the grounds for the annulment of the marriage "are such that the parties may subsequently ratify the marriage, [the marriage] is voidable, rather than void.").

For the foregoing reasons, we find no merit to the Executors' contention that the marriage was void ab initio due to Plaintiff providing false information on the application for the parties' marriage license.

## B. VOIDABLE MARRIAGES

Marriages that are *voidable*, but not void, are those entered into:

(1) when either party was insane; or
(2) the complainant was under duress;
(3) was under the age of consent;
(4) *when the consent was obtained by force, or fraud, and was given by mistake*;
. . . .
(7) when, for any other reason, the marriage was not binding on the complainant[.]

*Coulter*, 918 S.W.2d at 426 (quoting 2 Gibson's Suits in Chancery § 1147 note 10 (5th ed. 1956)) (emphasis added).

Contrary to the Executors' insistence that the marriage was void due to Plaintiff's fraudulent signing the marriage application, our courts have consistently held that a marriage procured by fraud is, at most, a voidable marriage. *Gordon v. Pollard*, 336 S.W.2d at 27 (citations omitted). In *Gordon* the wife was under age at the time of marriage and the license was procured by misrepresentation or fraud and, as the court explained, that circumstance rendered the marriage voidable, but not void. *Id.* Thus, when the consent to marriage was obtained by fraud, the marriage is not void; instead, it is "treated as valid and binding until its nullity is ascertained and declared by a competent court." *Brewer*, 673 S.W.2d at 532.

The parties have conceded that if the marriage between Plaintiff and the decedent was determined to be a voidable but not a void marriage, then the decedent's right to set aside the marriage abated at her death. *See Gordon*, 336 S.W.2d at 27 (stating the wife's complaint for annulment abated upon the death of her husband).[4] We, therefore, respectfully reverse the

---

[4]The right to set aside a voidable marriage, to obtain an annulment, is akin to the right to seek a divorce and "a cause of action for divorce is purely personal, and it has been held that such a cause of action terminates on the death of either spouse; and if an action for a divorce is commenced, and one of the parties dies thereafter, but before the entry of the final decree, the action abates." *Steele v. Steele*, 757 S.W.2d 340, 342 (Tenn. Ct. App. 1988).

trial court's grant of summary judgment in favor of the Executors on the ground the marriage was void ab initio.

## II. EQUITABLE ESTOPPEL

We have determined that the marriage was not void and that any right to avoid or annul the marriage abated with the death of the decedent. Therefore, Plaintiff was the surviving spouse of the decedent.[5] Nevertheless, the Executors insist he is equitably estopped to assert any of the claims of a surviving spouse.

Our ruling and the Executors' assertion of equitable estoppel leaves this appeal in a circumstance similar to that in *Woods v. Woods*, 638 S.W.2d at 406, after the court ruled that the right to annul the marriage abated upon the death of the deceased spouse. Like here, the court held that the defendant's marriage to her deceased husband was a voidable marriage; thus, the marriage remained valid unless and until avoided by the legal proceeding. *Id*. The husband died while the complaint for annulment was pending and the court ruled that the right to an annulment abated upon his death.[6] *Id*. Because the marriage was not annulled, the parties were still married when the husband died and the court ruled that the wife was the surviving spouse of her deceased husband. *Id*. The court also ruled that she was entitled to dissent from her husband's will unless she was, "under the facts in the instant case, judicially estopped." *Id*. The only difference in the cases is that the issue here is whether Plaintiff is equitably estopped to assert his claims as a surviving spouse.

For reasons explained below, we have separated our discussion of the claims for elective-share and exempt property from those for homestead and year's support.

### A. Elective-Share and Exempt Property

We determined that Plaintiff was married to the decedent at the time of her death; therefore, Plaintiff was her surviving spouse. As the surviving spouse, he is statutorily entitled to awards for elective-share and exempt property from the decedent's estate, with the only issue being the award he is entitled to receive for each claim. *See* Tenn. Code Ann. § 31-4-101(a)(1) ("The *surviving spouse* . . . who elects against a decedent's will, has a *right of election* . . . to take an elective-share amount equal to the value of the decedent's net estate . . . determined by the length of time the surviving spouse and the decedent were married to

---

[5]Plaintiff, Paul H. Meek, Sr., died while this appeal was pending; the Estate of Paul H. Meek, Sr., has been substituted as the plaintiff/appellant pursuant to Tenn. R. App. P. 19(a).

[6]The ground for annulment in *Woods* was the impotence of the husband. *Woods*, 638 S.W.2d at 405.

each other[.]" (emphasis added)); Tenn. Code Ann. § 30-2-101(a) ("The *surviving spouse .
. .* who elects against a decedent's will, *is entitled to receive* from the decedent's estate the
following exempt property[.]" (emphasis added)). As our courts have consistently held that
"the right to an elective or distributive share is not dependent on whether the surviving
spouse deserves to enjoy such benefits." *Young v. Hudgens*, 1989 WL 71041, *6 (Tenn. Ct.
App. June 30, 1989). Therefore, equitable estoppel is not an available defense to a surviving
spouse's claim for elective-share and exempt property.

Because Plaintiff established that he was the surviving spouse of the decedent, he is
entitled to an award of an elective-share and to receive the exempt property; therefore, we
reverse the summary dismissal of Plaintiff's claims for an elective share and exempt property
and, on remand, the trial court shall determine the award he is entitled to receive as his
elective share and to specific the exempt property he is entitled to receive. *See* Tenn. Code
Ann. §§ 31-4-101 and 30-2-101.

## B. Homestead and Year's Support

The foregoing notwithstanding, "wholly different considerations are present where
homestead and the statutory year's support are involved." *Fogo v. Griffin*, 551 S.W.2d 677
(Tenn. 1977) (citations omitted). For example, our Supreme Court held "a widow who
abandons her husband and is guilty of adultery forfeits her right to homestead and the
statutory year's support." *Id.* at 678; *see also*, *Keicher v. Mysinger*, 198 S.W.2d 330, 333
(Tenn. 1946), and *Prater v. Prater*, 9 S.W. 361 (Tenn. 1888). Further, "[t]he court *may*
consider the totality of the circumstances in fixing the allowance [for a year's support]
authorized by [Tenn. Code Ann. 30-2-102(a)]." *In re Estate of Grass*, M2005-00641-COA-
R3-CV, 2008 WL 2343068, *20 (Tenn. Ct. App. June 4, 2008), *perm. to appeal denied*,
(Tenn. 2009) (emphasis added). Therefore, the trial court is to consider the totality of the
circumstances when a surviving spouse's claim of homestead and year's support are at issue.
*Id.* Accordingly, equitable estoppel may be a defense to a surviving spouse's claim for
homestead and a year's support.

Estoppel is an affirmative defense identified in Tenn. R. Civ. P. 8.03. "An affirmative
defense pleads a matter that is not within the plaintiff's prima facie case." *George v.
Alexander*, 931 S.W.2d 517, 527 (Tenn. 1996) (citing 2A James W. Moore, et al., Moore's
Federal Practice 8.27[1] (2d ed. 1995)). Accordingly, when a defendant asserts an affirmative
defense, the defendant has the burden of proving facts in support of that defense.[7] *Carr v.*

---

[7]An exception, which does not apply in this case, is when the facts that support the affirmative
defense are part of the plaintiff's prima facie case; in which event the plaintiff still bears the burden of proof.
(continued...)

*Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991). The Executors asserted the affirmative defense of equitable estoppel; accordingly, the Executors bear the burden of proving facts in support of that defense. Moreover, "[e]stoppel is not favored and *it is the burden of the party seeking to invoke the doctrine to prove each and every element* thereof." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 823 (Tenn. Ct. App. 2011) (citations omitted) (emphasis added).

"Estoppel is a branch of the law of evidence and has its foundation in fraud[.]" *Rogers v. Colville*, 238 S.W. 80, 83 (Tenn. 1922) (citing Bigelow on Estoppel, 437; 10 R. C. L. 691).

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

> As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) *Reliance upon the conduct of the party estopped*; and (3) Action based thereon of such a character as to change his position prejudicially[.]

*Crye-Leike, Inc. v. Carver*, 415 S.W.3d at 823 (citations omitted) (emphasis added).

At a minimum, estoppel requires "(1) *reliance upon the statement or actions of another* without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting." *Id*. (citations omitted).

The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter

of law, *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); therefore, the Executors bear the burden of demonstrating that no genuine disputes of material fact exist.

---

[7](...continued)
*See Administrative Resources Inc. v. Barrow Group, L.L.C.*, 210 S.W.3d 545, 556 (Tenn. Ct. App. 2006); *see also Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991) ("Where a defendant . . . asserts the affirmative defense . . . it has the burden of proving facts in support of that defense unless it is a part of the plaintiff's prima facie proof.").

The Executors insist it is undisputed that the decedent "relied and acted on his representations and misrepresentations to her prejudice." Plaintiff, however, insists there are genuine disputes about whether the decedent lacked knowledge of his representations and, further, there are no facts in the record to support a determination that the decedent relied upon them. We have determined that Plaintiff has correctly stated the facts in this record; we have also determined that much of the Executors' contentions are just that, contentions, not facts.

It is undisputed that Plaintiff misrepresented his age on the marriage application; however, there is no evidence that the decedent married him in reliance on that fact or that she would not have married him had she known the representation was false. We also doubt this misrepresentation would have been a concern realizing they attended high school at the same time more than fifty years prior to their marriage, but we may not weigh the evidence at the summary judgment stage. What is important is that there is no evidence that the decedent married him in reliance on that fact.

Plaintiff's misrepresentation of the number of his prior marriages, however, could be a more serious misrepresentation matter; nevertheless, this record contains no evidence, disputed or undisputed, that the decedent would not have married him had she known the truth concerning his prior marriages. Moreover, we are to view the facts at summary judgment in the light most favorable to Plaintiff, as the non-moving party, including all reasonable inferences to be drawn therefrom, and it is reasonable to infer that the decedent did not and would not have relied on the misrepresentations in the application for marriage because she had already decided to marry him; otherwise, there would have been no need to obtain a marriage license.

"Summary judgments are not permitted when a case's determinative facts are in dispute. . . . If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." *Green v. Green*, 293 S.W.3d 493, 513-14 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993). For these reasons, we have concluded that the Executors failed to establish that the relevant facts at issue are undisputed. Accordingly, it was inappropriate to summarily dismiss the claims for homestead and year's support on the basis of equitable estoppel.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellees.

_____
FRANK G. CLEMENT, JR., JUDGE